UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LINDA MURDAUGH,                                  :
                                                 :
                           Plaintiff,         :         10 Civ. 7218 (HB)
                                                 :
             -against-                  :         **OPINION & ORDER**
                                                 :
THE CITY OF NEW YORK and IQBAL SULEHRIA,         :
individually and in his official capacity as an employee :
of the New York City Department of Correction,  :
                                                 :
                         Defendants.        :
------------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**

      Linda Murdaugh ("Plaintiff" or "Murdaugh") brings this action alleging that the City of New York ("City Defendant") and Iqbal Sulehria ("Sulehria"), individually and in his official capacity as an employee of the New York City Department of Corrections ("DOC"), discriminated against her on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e et seq. ("Title VII"), the New York State Human Rights Law, NY Executive Law §§ 290, et seq. ("SHRL"), and the New York City Human Rights Law, NYC Administrative Code §§ 8-101, et seq. ("CHRL").  Before the Court is City Defendant's motion to dismiss Murdaugh's claims as being time barred and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, City Defendant's motion is GRANTED in part and DENIED in part.

                          **I.**        **Factual and Procedural Background**

      Murdaugh is an African-American woman who was employed by DOC as a Correction Officer from 1998 until her retirement from DOC on March 26, 2010.  (First Amended Complaint ("FAC") ¶¶ 17, 68.)  Sulehria was employed by DOC as a civilian Legal Coordinator from 1995 until his resignation on July 19, 2010.  (FAC ¶ 19.)  Murdaugh alleges that while the two worked together at the Eric M. Taylor Center Law Library at Rikers Island ("Law Library"), Sulehria engaged in continuous discriminatory conduct and made several false allegations against Murdaugh beginning on June 29, 2004.  (FAC ¶ 21.)  In May 2005, Sulehria, proceeding *pro se*, commenced an action in this Court alleging that the City of New York and other

1

defendants including Murdaugh subjected him to a hostile work environment. *See Sulehria v. City of New York et al.*, 670 F. Supp. 2d 288 (S.D.N.Y. 2009).[1]

Murdaugh alleges that Sulehria continued to make a myriad of false allegations against her and on October 29, 2005, he propositioned her for sex in exchange for dropping his lawsuits. Murdaugh reported the conduct to DOC on several occasions, and DOC reassigned Sulehria in June 2006. (FAC ¶¶ 33, 46.) DOC transferred Sulehria several times and, in November 2008, reassigned him back to the Law Library where Murdaugh was still working. (FAC ¶¶ 47, 48.) Murdaugh alleges that Sulehria continued to make false allegations against her, including that in November 2008 she defecated on his desk (FAC ¶ 52), on multiple occasions caused equipment, supplies, reports and forms to go missing (FAC ¶¶ 52, 56, 65), on January 2009 made harassing phone calls including calling him a "bastard Muslim terrorist" and to "kiss her black ass" (FAC ¶ 59), and on February 4, 2010 called him a "piece of shit" and a "fucking Muslim." (FAC ¶ 67.) These allegations caused DOC to investigate Murdaugh on more than one occasion. Murdaugh also alleges that Sulehria showed hostility toward inmates of color (FAC ¶ 57) and that on August 19, 2009 Legal Coordinator Typhanie Lynch wrote the Director of Law Libraries to inform the City that Sulehria held great animosity toward women. (FAC ¶¶ 60, 77; Exh. 16.) Additionally, she alleges that DOC repeatedly denied her request for a tour change. (FAC ¶ 52, 66, 67; Exh. 19.) Murdaugh further alleges that throughout this time, DOC had notice of Sulehria's behavior because she and others filed reports on multiple occasions about his conduct. (FAC ¶ 52, 60, 63, 66, 67, 77, 78.) On March 26, 2010 Murdaugh retired, allegedly due to the conditions brought on by Sulehria in his capacity as an employee of DOC.

On May 11, 2010 Murdaugh filed a Charge with the Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue letter on or about September 16, 2010. (FAC ¶¶ 14, 15.) She filed this action on September 20, 2010. Sulehria subsequently relocated to Pakistan. (Docket No. 9.) City Defendant moved to dismiss the Complaint on November 10, 2010, and Murdaugh filed the First Amended Complaint ("FAC") on November 22, 2010. City Defendant advised the Court that it intended to proceed on its original motion, and the motion was fully briefed on December 3, 2010.

---

[1] The Division of Human Rights issued a finding of No Probable Cause on March 31, 2005. (FAC ¶ 23; Exh. 5, at 9.) Sulehria retained an attorney and subsequently commenced three more federal actions, all of which were either settled or dismissed.

2

## II.     Legal Standard

A motion to dismiss brought under Rule 12(b)(6) will be granted if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal on this ground, a claimant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 1950.

With respect to employment discrimination cases, the Supreme Court has held that a complaint need not allege specific facts that establish a prima facie case of discrimination. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002).[2] Rather, an employment discrimination complaint "must include only a short and plain statement of the claim ... [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. at 512 (internal quotations and citations omitted); see also *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Accordingly, to survive a motion to dismiss, a complaint in a Title VII case need not establish a prima facie case of employment discrimination, but the complaint must be facially plausible and provide fair notice to the defendants of the basis for the claim. *Morales v. The Long Island Rail Road Company*, No. 09 CV 8714 (HB), 2010 WL 1948606 at *3 (S.D.N.Y. May 14, 2010); *Barbosa v. Continuum Health Partners, Inc.*, 09 CV 6572 (SAS), 2010 WL 768888 at *3 (S.D.N.Y. Mar. 8, 2010); see also *Fowler v. Scores Holding Co., Inc.*, 677 F.Supp.2d 673, 678 (S.D.N.Y. 2009).

## III.    Discussion

Murdaugh files this action pursuant to Title VII, SHRL and CHRL, alleging that City Defendant subjected her to a hostile work environment on the basis of her race and gender,

---

[2] In *Twombly*, the Supreme Court explicitly affirmed the *Swierkiewicz* pleading standard for employment discrimination claims. *See* 550 U.S. at 547 ("This analysis does not run counter to *Swierkiewicz* .... Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.") (internal quotations and citations omitted); *see also Iqbal*, 129 S.Ct. at 1953 ("Our decision in *Twombly* expounded upon the pleading standard for all civil actions, and it applies to antitrust and discrimination suits alike.") (internal quotations and citation omitted).

retaliated against her and subjected her to constructive discharge.  City Defendant moves this Court to dismiss the First Amended Complaint arguing that most of Sulehria's conduct that would have given rise to the claims is time barred, and that Murdaugh fails to adequately state a claim for hostile work environment or retaliation because Sulehria's relevant conduct is not sufficiently severe or pervasive and that there is insufficient evidence to show that Sulehria acted on the basis of race or gender.  (Def. Mem. at 10-16.)  City Defendant also argues that to the extent this Court does not dismiss Murdaugh's claims for hostile work environment, her constructive discharge claim, which requires a higher showing of severity, should be dismissed.  (Def. Mem. at 16-19.)  This Court will address these arguments in turn.

### A. Time Barring

#### i. Title VII Claims

City Defendant argues that Murdaugh's Title VII claims that accrued before July, 15, 2009 are time barred.  Under Title VII, a plaintiff may only assert claims involving acts alleged to have occurred within 300 days of filing a discrimination complaint with a state or local agency.  42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101 (2002).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *AMTRAK*, 536 U.S. at 102.  Under the continuing violation exception, "[a] charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.  To invoke the continuing violation doctrine, a plaintiff may show "specific and related instances of discrimination [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Weeks v. New York State*, 273 F.3d 76, 82 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir.1998) (internal quotation marks and citations omitted).  "[I]f a plaintiff 'files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination,' the statute of limitations is extended 'for all claims of discriminatory acts committed under that policy.'" *Weeks,* 273 F.3d at 82 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997).  However, "[a]bsent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception." *Id.* at 84 (citing *Quinn*, 159 F.3d at 766).

Murdaugh filed her Charge of Discrimination with the EEOC on May 11, 2010. Sulehria engaged in conduct that continued through the 300 day period prior to her filing. This Court will not consider Sulehria's conduct prior to November 2008 because DOC's transferring of Sulehria out of the Law Library between June 2006 and November 2008 is sufficient to cut off the continuing violation exception for all events prior to November 2008. *See Weeks*, 273 F.3d at 83. Nevertheless, Murdaugh's allegations of specific and related instances of discrimination permitted by DOC to continue unremedied from November 2008 through February 4, 2010 are sufficient at this stage for the Court to reasonably infer that the conduct amounted to a discriminatory policy or practice to invoke the continuing violation exception for that period. Murdaugh's filing of her Charge on May 11, 2010 is within the 300 day window of the most recent event she alleged took place on February 4, 2010. Therefore, to the extent that Murdaugh has alleged facts occurring in November 2008 and thereafter, her claims are not time barred.

    *ii.*    *SHRL and CHRL*

City Defendant argues that Murdaugh's SHRL and CHRL claims that accrued before September 20, 2007 are time barred. Claims pursuant to the SHRL and CHRL are subject to a three-year statute of limitations. *See Morrison v. N.Y.C. Police Dep't*, 214 A.D.2d 394 (1st Dep't 1995); *Alaimo v. N.Y.C. Dep't of Sanitation*, 203 A.D.2d 501 (2d Dep't 1994); NYC Administrative Code § 8-502(d). The standards for a continuing violation exception under the SHRL and CHRL are similar to the standard under a Title VII claim. *See Clark v. State*, 302 A.D.2d 942 (4th Dep't 2003). For purposes of the SHRL and CHRL, this Court will consider the events that took place within the statute of limitations period beginning on September 20, 2007, three years before the filing of the Complaint. Plaintiff has not presented sufficient facts demonstrating an ongoing discriminatory practice between June 2006 and September 2007 for this Court to draw the inference that the continuing violation exception should apply for the allegations pre June 2006. Therefore, facts that this Court will consider in deciding this motion to dismiss are the same for the Title VII, SHRL and CHRL claims, specifically, they are those allegations that occurred beginning in September 2008.

**B. Hostile Work Environment Claims**

    *i.*    *Title VII*

Under Title VII it is unlawful for an employer to discriminate against any individual with respect to race, color, religion, sex, or national origin. *See Patane*, 508 F.3d at112. In order to

prevail on a claim for hostile work environment under Title VII, a plaintiff must demonstrate three elements.  First, the plaintiff must show that she was subjected to conduct that was objectively severe or pervasive "to alter the conditions of the victim's employment and create an abusive working environment ...."  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citations omitted)); *Patane*, 508 F.3d at113.  Second, the plaintiff must show that she subjectively perceived the environment to be hostile or abusive.  *Patane*, 508 F.3d at 113; *Feingold*, 366 F.3d at 150.  Third, the plaintiff must show that the conduct created in this case an abusive environment because of the plaintiff's race or gender.  *See Patane*, 508 F.3d at 113, 114 ("a plaintiff need only allege that she suffered a hostile work environment because of her gender, not that all of the offensive conduct was *specifically* aimed at her") (emphasis in original).  Courts consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'"  *Patane*, 508 F.3d at 113 (quoting *Harris v. Forklift Sys*., *Inc.*, 510 U.S. 17, 23 (1993)).  "Ultimately, to avoid dismissal under [Rule] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and '[the Second Circuit has] repeatedly cautioned against setting the bar too high' in this context."  *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Additionally, the plaintiff must show "a specific basis for imputing the conduct creating the hostile work environment to the employer."  *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).  "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that the employer … knew of the harassment but did nothing about it."  *Feingold*, 366 F.3d at 152; *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004).

Considering the conduct beginning in November 2008, Murdaugh has alleged sufficient facts for the court to draw the reasonable inference that Sulehria created a hostile work environment and that City Defendant is liable for the alleged misconduct.  This Court can infer that Sulehria's allegedly false claims against Murdaugh and the impact they had on her working life would objectively create an abusive working environment.  Being accused of defecating on a coworker's desk, using racist language and causing work equipment to go missing are serious

accusations that, under the circumstances, may very well have amounted to severe and pervasive conduct.  These claims, coupled with Murdaugh's requests for a tour change, demonstrate that she subjectively perceived the environment to be abusive.  Under the pleading standard set out by *Swierkiewicz*, Murdaugh's allegations that Sulehria showed hostility toward inmates of color and claimed that she told him to "kiss her black ass," coupled with the letter from Typhanie Lynch purportedly demonstrating how Sulehria has shown disdain for women, are sufficient at this stage for the Court to infer that Murdaugh suffered harassment because of her race or gender.  Finally, Murdaugh has shown that DOC had knowledge of the harassment through reports by Murdaugh and Legal Coordinator Typhanie Lynch, and that DOC failed to take remedial action between November 2008 and March 2010.

      *ii.*     *SHRL and CHRL*

The elements of a claim for hostile working environment under SHRL and CHRL are substantially similar to those under Title VII.  *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004); *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 267 (E.D.N.Y. 2009).  Unlike Title VII, however, CHRL allows liability to attach for harassing conduct that does not qualify as "severe or pervasive."  *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62 (1st Dep't 2009); *Fleming*, 644 F. Supp. 2d at 268.  For the same reasons as articulated above, Murdaugh has alleged sufficient facts to withstand the motion to dismiss.

**C. Retaliation**

Title VII prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice by this [subchapter], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To prevail on a retaliation claim under Title VII, the plaintiff must prove: (1) the plaintiff engaged in protected participation or opposition conduct known by the alleged retaliator; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the first two elements.  *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980).

Murdaugh has alleged facts sufficient to withstand a motion to dismiss.  First, she sufficiently alleges that she engaged in protected opposition conduct.  On December 12, 2009, Murdaugh, following orders, submitted a report to Deputy Warden Bailey concerning an allegation by Sulehria over missing reports and equipment.  (FAC ¶ 65.)  On December 15,

2009, she requested a tour change to limit her time spent in the Law Library with Sulehria. (FAC ¶ 66.) Second, she alleges that she suffered an adverse employment action. On February 4, 2010, Sulehria continued to perpetuate a hostile work environment when he allegedly falsely accused Murdaugh of publicly verbally insulting him, calling him a "piece of shit" and a "fucking Muslim." (FAC ¶ 67.) Third, the causal connection may be inferred at this stage based on the temporal connection of the two events. Sulehria's allegations occurred less than two months following Murdaugh's opposition conduct, and it is reasonable to infer under the circumstances that Sulehria and DOC were aware of the conduct.

### D. Constructive Discharge

A plaintiff has a claim for constructive discharge "when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino*, 385 F.3d at 229 (internal citations and quotation marks omitted). A plaintiff need not necessarily prove that the employer had the specific intent for the employee to resign, but must "at least demonstrate that the employer's actions were deliberate and not merely negligent or ineffective." *See id.* at 230-31 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) (internal quotation marks omitted). "[W]orking conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Terry*, 336 F.3d at 152 (internal quotation marks and citation omitted).[3]

Murdaugh has failed to demonstrate that City Defendant's failure to remedy Sulehria's behavior was deliberate. Although Murdaugh has pled that City Defendant was complicit with Sulehria's behavior sufficient to sustain a claim for hostile work environment that may be imputed to City Defendant, Murdaugh has not alleged that City Defendant intentionally or deliberately caused Murdaugh's work atmosphere to be so intolerable as to force her to resign. Even under the liberal pleading standard afforded to employment discrimination claims, Murdaugh's allegations that City Defendant merely failed to address and remedy Sulehria's actions, which may amount to negligence or ineffectiveness, are insufficient as a matter of law to support a claim for constructive discharge. *See Petrosino*, 385 F.3d at 230-31.

---

[3] Case law suggests that a "plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *See, e.g.*, *Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999) (consolidating cases).

Absent deliberate employer action, a significant passage of time where the employee endured the conditions complained of is sufficient to undermine a claim that working conditions were intolerable. *See, e.g., Borski v. Staten Island Rapid Transit*, 04 CV 3614 (SLT) (CLP), 2009 U.S. Dist. LEXIS 103347, at *23-24 (E.D.N.Y. Oct. 28, 2009) (citing *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 00 CV 6307 (KMK), 2007 U.S. Dist. LEXIS 6534 at *21 (S.D.N.Y. Jan. 27, 2007); *Garrett v. Mazza*, 97 CV 9148 (BSJ), 2005 U.S. Dist. LEXIS 20403, at *5 (S.D.N.Y. Aug. 30, 2005). Murdaugh remained at DOC the entire time Sulehria was assigned to the Law Library between 2006 and 2008, and for approx 17 months after he returned in November 2008 before she retired in March 2010. Therefore, Murdaugh cannot sustain her claim for constructive discharge and it must be dismissed.

### Conclusion

For the foregoing reasons, City Defendant's motion to dismiss the constructive discharge claim is GRANTED and its motion to dismiss all other claims is DENIED. The Clerk of the Court is instructed to close this motion.

**IT IS SO ORDERED.**

**New York, New York**

**March 8, 2011**

*[signature]*

**U.S.D.J.**