Docket No. 10 CV 7218 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDA MURDAUGH,

                                          Plaintiff,

-against-

THE CITY OF NEW YORK and IQBAL SULEHRIA, individually and in his official capacity as an employee of the New York City Department of Correction,

                                          Defendants.

**CITY DEFENDANT'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street, Rm. 2-138*
*New York, N.Y.  10007*

*Of Counsel:  Alicia H. Welch*
*Tel:  (212) 788-6760*
*Law Manager No. 2010-037537*

Eric Eichenholtz
Alicia H. Welch,
    Of Counsel.

# **TABLE OF AUTHORITIES**

**Cases**

Baker v. Dorfman, 239 F.3d 415 (2d Cir. 2000)……………………………………………..4

Benson v. N.Y. City Bd. of Educ., 02 CV 4756 (NGG) (RML), 2006 U.S. Dist. LEXIS 73295 (E.D.N.Y. Sept. 29, 2006)……………………………………………………………....5,10

Chertkova v. Connecticut Gen. Life Ins., 92 F.3d 81 (2d Cir. 1996)……………………….....8

DGM Investments v. New York Futures Exchange, Inc., 288 F. Supp. 2d 519 (S.D.N.Y. 2003)……………………………………………………………………………3,4

Forman v. Davis, 371 U.S. 178 (1962)……………………………………………………..12

Lee v. Sony BMG Music Entertainment, Inc., 07 CV 6733 (CM), 2010 U.S. Dist. LEXIS 19481 (S.D.N.Y. March 3, 2010)……………………………………………………………..*passim*

Lopes v. Caffe Centrale, 548 F.Supp.2d 47 (S.D.N.Y. 2008)……………………………….9

Lopez v. S.B. Thomas, 831 F.2d 1184 (2d Cir. 1987)……………………………………….9

McCarthy v. Manson, 714 F.2d 234 (2d Cir. 1983)…………………………………………4

Min Jin v. Metro Life Ins. Co., 310 F.3d 84 (2d Cir. 2002)………………………………..12

Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir. 2004)…………………………………… *passim*

Respass v. New York City Police Dep't, 852 F. Supp. 173 (E.D.N.Y. 1994)…………….....12

Shrader v. CSX Transp., Inc., 70 F.3d 255 (2d Cir. 1995)………………………………….4

S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28 (2d Cir. 1979)…………….....12

Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538 (2d Cir. 1996)………………..12

Whidbee v. Garzarelli Food Specialties, 223 F.3d 62 (2d Cir. 2000)……………………….8

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT................................................................................................................................ 3

    POINT I…………………………………………………………………………………...3

        THE COURT DID NOT OVERLOOK EVIDENCE OR LAW WITH RESPECT TO PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIM AND, AS SUCH, PLAINTIFF'S MOTION FOR RECONSIDERATION MUST BE DENIED............... 3

            A. Legal Standard……………………………………………………………….3

            B. Plaintiff's Constructive Discharge Claim……………………………………4

    POINT II……………………………………………………………………………………11

        THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AS FUTILE. .................................................... 11

            A. Legal Standard………………………………………………………………..12

            B. Plaintiff's Constructive Discharge Claim……………………………………..12

CONCLUSION........................................................................................................................... 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

LINDA MURDAUGH,

            Plaintiff,

   -against-

THE CITY OF NEW YORK and IQBAL SULEHRIA,   10 Civ. 7218 (HB)
individually and in his official capacity as an employee of
the New York City Department of Correction,
            Defendants.

------------------------------------------------------------------------x

**CITY DEFENDANT'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiff Linda Murdaugh ("plaintiff"), a former Correction Officer ("CO") with the New York City Department of Correction ("DOC"), brings this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000-e, et seq. ("Title VII"), the New York State Human Rights Law, NY Executive Law §§ 290, et seq. ("SHRL"), and the New York City Human Rights Law, NYC Administrative Code §§ 8-101, et seq. ("CHRL") alleging that defendants subjected her to a hostile work environment based on her race (African American) and gender (female) and retaliated against her. Specifically, plaintiff contends that a DOC co-worker, Iqbal Sulehria, subjected plaintiff to a hostile work environment and retaliated against her from November 2004 until June 2006 and again from November 2008 until March 2010 when Sulehria took the following actions against plaintiff: (1) made false allegations about plaintiff to DOC, the New York State Division of Human Rights, the New York City Police Department,

and in federal lawsuits including allegations that plaintiff searched his locker, destroyed his property, stole records and other office supplies from him, falsified documents, made harassing and threatening phone calls to him, defecated on his desk, left urine, garbage, and dirty dishes on his desk, and called him a "Muslim shit," "fucking Muslim," "Muslim bastard," and a "piece of shit;" (2) coerced inmates to make false allegations about plaintiff; (3) propositioned plaintiff for sex on one occasion; and (4) reported to DOC that plaintiff was undermining his authority and fostering a hostile work environment.  Plaintiff further alleges that Sulehria retaliated against her in taking the above-mentioned actions due to plaintiff's refusal of his sexual advance, plaintiff's participation in investigations of Sulehria's complaints that he was being discriminated against based on his national origin (Pakistani) and religion (Muslim), and plaintiff's participation in the investigations of her own complaints of discrimination and harassment against Sulehria.  Finally, plaintiff claims that the City refused to grant plaintiff's requests for tour changes and, therefore, permitted plaintiff and Sulehria to continue working together.

On November 10, 2010, Defendant City of New York ("City Defendant") moved, pursuant to Rule 12(b)(6), to dismiss the complaint.  On March 8, 2011, the Court issued an Opinion and Order dismissing plaintiff's Title VII claims that accrued before November 2008 as time-barred and dismissing plaintiff's SHRL and CHRL claims that accrued before September 2008[1] as time-barred.  In addition, the Court dismissed plaintiff's constructive discharge claim

---

[1] Upon information and belief, the portion of the Court's Order dismissing some of plaintiff's SHRL and CHRL claims as time-barred contains a typographical error. There are no allegations in the Complaint or the First Amended Complaint between June 2006 and November 2008. Accordingly, upon information and belief, City Defendant respectfully submits that the Court intended to dismiss plaintiff's SHRL and CHRL claims that accrued prior to November 2008, which is what the Court ordered with respect to plaintiff's Title VII claims. See Opinion and Order at p. 5.

finding that plaintiff "failed to demonstrate that City Defendant's failure to remedy Sulehria's behavior was deliberate."

On March 22, 2011, plaintiff moved for reconsideration of the Court's March 8, 2011 Opinion and Order solely with respect to dismissal of the constructive discharge claim. On March 29, 2011, plaintiff moved for leave to file a second amended complaint seeking, in essence, the same relief as the motion for reconsideration, specifically resurrection of the constructive discharge claim. City Defendant now submits its consolidated opposition to plaintiff's motions.

## STATEMENT OF FACTS

City Defendant respectfully refers the Court to the Statement of Facts set forth in its Memorandum of Law in Support of City Defendant's Motion to Dismiss the Complaint, dated November 10, 2010 ("City Defendant's Motion to Dismiss") and to the Court's March 8, 2011 Opinion and Order for a statement of pertinent facts.

## ARGUMENT

### POINT I

**THE COURT DID NOT OVERLOOK EVIDENCE OR LAW WITH RESPECT TO PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIM AND, AS SUCH, PLAINTIFF'S MOTION FOR RECONSIDERATION MUST BE DENIED.**

A. Legal Standard

A motion for reconsideration is governed by Local Rule 6.3 and "is appropriate where a court overlooks controlling decisions or factual matters that were put before it in the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." DGM Investments v. New York Futures Exchange, Inc., 288 F. Supp.

2d 519, 523 (S.D.N.Y. 2003) (internal citations and quotations omitted).  A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice."  Id. (internal citations and quotations omitted).  "The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  The determination of a motion for reconsideration is a matter committed to the "sound discretion of the district court judge and will not be overturned on appeal absent an abuse of discretion."  McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).  Accord Baker v. Dorfman, 239 F.3d 415, 427 (2d Cir. 2000).

   **B. Plaintiff's Constructive Discharge Claim.**

In her motion for reconsideration, plaintiff has not cited to any evidence or law that was before the Court and that the Court nevertheless overlooked.  See Memorandum of Law Supporting Plaintiff's Motion for Reconsideration, dated March 22, 2011 ("Plaintiff's Moving Papers for Reconsideration").  In fact, in her moving papers, plaintiff does nothing more than reference a case that the Court cited in its Opinion and Order, specifically Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir. 2004).  See Plaintiff's Moving Papers for Reconsideration at p. 3.  The fact that the Court referenced the case clearly demonstrates that the Court considered this precedent, and plaintiff does not contend that the Court misinterpreted or misapplied the law.

In addition, in her moving papers, plaintiff simply repeats the allegations set forth in the First Amended Complaint that she deems relevant to the constructive discharge claim.  See id. at pp. 3-4.  However, it is apparent from the Opinion and Order that the Court considered the First Amended Complaint as the operative pleading in resolving City Defendant's Motion to

4

Dismiss.  See generally Opinion and Order.  In short, plaintiff's motion for reconsideration is devoid of any analysis as to what facts and/or law the Court overlooked in dismissing plaintiff's constructive discharge claim.  As such, the motion for reconsideration must be denied.

Plaintiff also contends that the Court should reconsider her constructive discharge claim based upon "new evidence" she obtained during discovery, specifically certain documents disclosed by City Defendant that plaintiff claims establish City Defendant's "knowledge and consideration of" the alleged hostile work environment and demonstrate that City Defendant "made the deliberate decision to keep plaintiff and defendant Sulehria working together" despite the alleged hostile work environment.  See Plaintiff's Moving Papers for Reconsideration at pp. 4, 6. Plaintiff's motion for reconsideration on this ground should also be denied because even if the Court considers these documents, plaintiff's constructive discharge claim fails as a matter of law.

"When, as here, an employee alleging constructive discharge has tolerated allegedly difficult working conditions for a number of years, the relevant question for a court is whether 'deliberate employer action' immediately preceding the discharge 'ratcheted the harassment up to the breaking point for a reasonable person in [the plaintiff's] situation.'" Benson v. N.Y. City Bd. of Educ., 02 CV 4756 (NGG) (RML), 2006 U.S. Dist. LEXIS 73295, at *28 (E.D.N.Y. Sept. 29, 2006) (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 230 (2d Cir. 2004) (examining only the two months immediately preceding the alleged constructive discharge).[2]  Importantly, "these deliberate acts **must have been taken for the purpose of**

---

[2] Pursuant to Local Rule 7.1 (c), copies of all cited cases reported on computerized databases and not previously provided to Defendant Sulehria, who is proceeding *pro se*, are collectively annexed to the copy of the brief served on Defendant Sulehria, as Appendix A.

**forcing plaintiff to resign**." See Lee v. Sony BMG Music Entertainment, Inc., 07 CV 6733 (CM), 2010 U.S. Dist. LEXIS 19481, at *26 (S.D.N.Y. March 3, 2010) (citing Kader v. Paper Software, Inc., 111 F.3d 337, 339 (2d Cir. 1997) (additional citations omitted) (emphasis added). In its Opinion and Order, the Court correctly found that plaintiff "has not alleged that City Defendant intentionally or deliberately caused Murdaugh's work atmosphere to be so intolerable as to force her to resign.  Even under the liberal pleading standard afforded to employment discrimination claims, Murdaugh's allegations that City Defendant merely failed to address and remedy Sulehria's actions, which may amount to negligence or ineffectiveness, are insufficient as a matter of law to support a claim for constructive discharge." See Opinion and Order at p. 8 (citing Petrosino, 385 F.3d at 230-31).

       Here, plaintiff asserts that the Court should permit her to resurrect her constructive discharge claim based on memoranda produced to plaintiff during discovery, which plaintiff contends demonstrate that the City acted deliberately in failing to remedy Sulehria's behavior by allowing plaintiff and Sulehria to continue working together.  See Plaintiff's Moving Papers for Reconsideration at pp. 4, 6.  However, none of the memoranda submitted by plaintiff support plaintiff's contention that City Defendant deliberately took action to force plaintiff to resign.  Instead, the memorandum demonstrate the opposite proposition, that is that various DOC supervisors took action in an attempt to remedy the conflict between plaintiff and Defendant Sulehria.

       For example, in a memorandum from Deputy Warden (D.W.) William Diaz to Warden Emmanuel Bailey, dated January 12, 2009, D.W. Diaz advises that he will counsel Defendant Sulehria with respect to his behavior and that he will monitor this behavior and further advises that Karen Powell, Director of Law Libraries, had advised him that Sulehria had

been disciplined, but that he had served his disciplinary penalties. See Declaration of Matthew Flamm Supporting Plaintiff's Motion to Amend, dated March 29, 2011 ("Flamm Decl."), Exhibit 3. Similarly, in a memorandum, dated January 26, 2009, from D.W. Diaz to Warden Bailey, D.W. Diaz advised that he had a conference with Defendant Sulehria regarding his behavior and recommended that Sulehria be transferred out of the facility. See id., Exhibit 4. In memoranda from Warden Bailey to Ms. Powell, dated September 4, 2009, and from Warden Bailey to Inspector General Robert Gigante, dated September 16, 2009, the Warden reported that Defendant Sulehria had made certain allegations against Legal Coordinator Typhanie Lynch and recommended that Sulehria be transferred out of the facility. See id., Exhibit 5. Further, in a memorandum to file from Powell, dated November 25, 2009, Powell stated that she and Larry Triplett, Deputy Director of Law Libraries, had met with Sulehria to discuss various issues and that Sulehria had advised them that he was under treatment for a psychotropic disorder. See id., Exhibit 6. By memorandum, dated November 30, 2009, Warden Bailey reported to Powell that Sulehria had made false allegations against plaintiff and requested that Sulehria be administratively transferred out of the facility. See id., Exhibit 8. By memorandum, dated December 2, 2009, D.W. Diaz advised Warden Bailey that plaintiff had submitted a request for a transfer, recounted that in January 2009, D.W. Diaz had conducted investigations into several complaints between plaintiff and Sulehria, and recommended that Sulehria be transferred. See id., Exhibit 7. By memorandum, dated December 9, 2009, Powell forwarded Warden Bailey's request for an administrative transfer of Sulehria to DOC Assistant Commissioner Ari Wax. See id., Exhibit 8. In addition, D.W. Diaz advised Warden Bailey, by memorandum dated December 15, 2009, that Sulehria and Lynch had filed complaints against each other. See id., Exhibit 9. Lastly, by memorandum, dated December 21, 2009, D.W. Diaz reported to Warden Bailey that

he had met with Sulehria regarding complaints filed by plaintiff and Lynch and recommended that Sulerhia be transferred out of the facility and that plaintiff and Lynch receive tour changes. See id., Exhibit 10.[3]

As such, the memoranda referenced by plaintiff do not demonstrate that City Defendant deliberately took action to force plaintiff to retire.  By contrast, they establish that City Defendant acted in response to every complaint filed by plaintiff, Defendant Sulehria, and others, including Lynch.  While it is true that after November 2008, neither plaintiff nor Defendant Sulehria, was transferred out of the facility, "refusal to accommodate plaintiff's request for a transfer [] does not rise to the level needed to support a claim for constructive discharge."  See Lee, 2010 U.S. Dist. LEXIS 19481, at *27.  In fact, it is well-settled in this Circuit that "ineffective or even incompetent" action on the part of the employer does not rise to the level of deliberate action taken for the purpose of forcing plaintiff to resign.  See Whidbee v. Garzarelli Food Specialties, 223 F.3d 62, 74 (2d Cir. 2000); see also Opinion and Order at p. 8.  Indeed, in dismissing the plaintiff's constructive discharge claim in Lee, 2010 U.S. Dist. LEXIS, at *29-*30, the Court found that the plaintiff's manager in that case listened to her complaint, contacted the plaintiff's supervisor about the complaint, reprimanded the plaintiff's supervisor, and then convened a meeting to address the working relationship between the plaintiff and her supervisor, and, therefore, did not deliberately take action to force plaintiff to resign.

Similarly in this case there is an utter lack of any allegation that the DOC employees engaged in deliberate acts designed to force plaintiff to resign.  This stands in stark contrast to the cases which have found constructive discharge, where specific, supported allegations of affirmative, deliberate conduct existed.  Compare Chertkova v. Connecticut Gen.

---

[3] This document is labeled Exhibit 10, but is filed on ECF as Exhibit 12.

Life Ins., 92 F.3d 81, 89 (2d Cir. 1996) (finding constructive discharge where "supervisor engaged in a pattern of baseless criticisms, said [plaintiff] would not 'be around,' and that [plaintiff] would be fired instantly if she did not meet certain ambiguous objectives"); Lopez v. S.B. Thomas, 831 F.2d 1184, 1188 (2d Cir. 1987) (finding evidence of constructive discharge because supervisor told employee that "he would be fired at the end of [a] probationary period no matter what he did to improve his allegedly deficient performance"); Lopes v. Caffe Centrale, 548 F.Supp.2d 47, 54 (S.D.N.Y. 2008) (finding an issue of material fact concerning whether the plaintiff's employer acted deliberately where the plaintiff claimed that his manager conditioned plaintiff's continued employment on his submission to a customer's requests for sexual favors).

Similar to the facts in Lee, in the instant case, the memoranda establish that DOC supervisors listened to plaintiff's complaints, as well as those asserted by Sulehria and others, met with Sulehria, plaintiff, and others, and deliberated whether to transfer Sulehria and/or plaintiff.[4]  Accordingly, they do not evidence that City Defendant deliberately forced plaintiff to retire.  As in Lee, 2010 U.S. Dist. LEXIS 19481, at *29-*30, evidence that the employer did not deal with the situation in the way plaintiff wanted is insufficient to state a plausible claim for constructive discharge.  See id.  Therefore, plaintiff's motion for reconsideration of the constructive discharge claim based on "new evidence" must be denied.[5]

---

[4] City Defendant also notes that it previously transferred Defendant Sulehria out of the facility and he had no contact with plaintiff from June 2006 until November 2008, see First Amended Complaint at ¶¶ 46-48, further undermining plaintiff's contention that City Defendant took deliberate action to force plaintiff to retire.

[5] Plaintiff has not moved for reconsideration with respect to that portion of the Court's Opinion and Order finding that "absent deliberate employer action, a significant passage of time where the employee endured the conditions complained of is sufficient to undermine a claim that working conditions were intolerable." See Opinion and Order at p. 9 (internal citations omitted). Accordingly, should the Court deny plaintiff's motion for reconsideration with respect to whether City Defendant's actions were deliberate, plaintiff has asserted no other ground for reconsideration and the motion must be denied.

Moreover, the issue of whether the employer took deliberate action to force plaintiff to resign/retire is only part of the relevant inquiry. Courts also consider whether the 'deliberate employer action' immediately preceding the discharge 'ratcheted the harassment up to the breaking point for a reasonable person in [the plaintiff's] situation.'" See Benson, 02 CV 4756 (NGG) (RML), 2006 U.S. Dist. LEXIS 73295, at *28 (quoting Petrosino, 385 F.3d at 230 (examining only the two months immediately preceding the alleged constructive discharge). In the instant case, plaintiff, by her own admission, was unaware of the "new evidence," namely the correspondence between plaintiff's supervisors, [6] until City Defendant produced these documents during discovery. See Plaintiff's Moving Papers for Reconsideration at p. 2, fn. 1, p. 4; see also Memorandum of Law Supporting Plaintiff's Motion for Leave to Amend her Complaint, dated March 29, 2011 ("Plaintiff's Moving Papers for Leave to Amend") at p. 2. As such, it defies logic for plaintiff to contend that although she was unaware of these allegedly deliberate actions by City Defendant to force her to retire, her work environment was nevertheless "ratcheted up" by City Defendant's actions thereby forcing her to retire. In addition, the memoranda that comprise that "new evidence" are dated January 2009, November 2009, and December 2009 and, accordingly, are outside of the two-month period of time immediately preceding plaintiff's retirement on March 26, 2010. See First Amended Complaint at ¶ 26. Accordingly, even if plaintiff knew about them, which she concedes she did not, they should not be considered in analyzing whether the alleged hostile work environment was ratcheted up by these memoranda. See Benson, 02 CV 4756 (NGG) (RML), 2006 U.S. Dist.

---

[6] Plaintiff also includes as part of her "new evidence," memoranda from Sulehria to supervisors and from Lynch to supervisors, but, similarly, plaintiff contends she was unaware of these documents prior to their disclosure by City Defendant.

10

LEXIS 73295, at *28 (quoting Petrosino, 385 F.3d at 230 (examining only the two months immediately preceding the alleged constructive discharge).

Finally, plaintiff continues to assert that Sulehria's February 4, 2010 allegations against her and the subsequent DOC investigation into those allegations led plaintiff to the conclusion that "she could not take it any longer" and she retired.  See Plaintiff's Moving Papers for Leave to Amend at pp. 7-8.  Plaintiff included these allegations in the First Amended Complaint.  See First Amended Complaint at ¶ 67.  As such, they were part of the record before the Court when it decided City Defendant's Motion to Dismiss and plaintiff has not asserted that the Court overlooked these facts in issuing its Opinion and Order with respect to the constructive discharge claim.  Accordingly, plaintiff's motion for reconsideration should be denied.

## POINT II

### THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AS FUTILE.

Should the Court deny plaintiff's motion for reconsideration, plaintiff seeks leave to file a second amended complaint in order to reassert the constructive discharge claim that this Court dismissed.  See Plaintiff's Memorandum of Law Supporting Plaintiff's Motion for Leave to Amend her Complaint, dated March 29, 2011 ("Plaintiff's Moving Papers for Leave to Amend"); see also Opinion and Order at pp. 8-9.  Plaintiff contends that the Court should grant leave to file a second amended complaint because certain documents disclosed by City Defendant during discovery demonstrate City Defendant's "knowledge and tolerance of" the alleged hostile work environment that plaintiff claims led to her constructive discharge.  See Plaintiff's Moving Papers for Leave to Amend at p. 2.

A. **Legal Standard**

Rule 15(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. Pro.") instructs that leave to amend complaints should be "freely given." However, it has long been held that leave to amend need not be granted where the proposed amendment is futile. Forman v. Davis, 371 U.S. 178, 182 (1962); Min Jin v. Metro Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002). An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis. See S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42 (2d Cir. 1979); Respass v. New York City Police Dep't, 852 F. Supp. 173 (E.D.N.Y. 1994).

As a preliminary matter, plaintiff contends that the Court should grant leave to amend not only pursuant to Fed. R. Civ. Pro. 15, but also pursuant to Rule 60 (b)(2). See Plaintiff's Moving Papers for Leave to Amend at pp. 1, 3, 8-9. Fed. R. Civ. Pro. 60 is wholly inapplicable to either plaintiff's motion to amend or plaintiff's motion for reconsideration. Fed. R. Civ. Pro. 60 provides for relief from a **final judgment or order**. (emphasis added). Moreover, a Rule 60(b)(2) motion may only be considered if new evidence "could not have been discovered in time to move for a new trial under Rule 59(b). "Rule 60(b) exclusively governs final judgments, meaning those that are sufficiently final that they may be appealed." See Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir. 1996). Thus, it is plain that Rule 60(b)(2) has absolutely no relevance with respect to this pre-trial motion for amending pleadings prior to an entry of final judgment.

B. **Plaintiff's Constructive Discharge Claim.**

As set forth above, see Point I, B, plaintiff's "new evidence" does not demonstrate that City Defendant acted deliberately to force plaintiff to retire. By contrast, the memoranda

exchanged between and among various DOC supervisors establish that City Defendant investigated complaints made by plaintiff, Defendant Sulehria, and others. They further establish that DOC supervisors held meetings with Defendant Sulehria in an attempt to rectify his behavior. The memoranda also show that DOC supervisors discussed and deliberated whether to transfer Defendant Sulehria and/or to change plaintiff's tour. In addition, the memoranda do not demonstrate that the alleged hostile work environment was ratcheted up in the few months preceding plaintiff's retirement thereby forcing plaintiff to leave DOC as, by plaintiff's own admission, she was unaware of these memoranda until discovery in this case. Accordingly, plaintiff's motion for leave to amend the complaint should be denied because if the amendments are permitted, the constructive discharge claim would be subject to dismissal for the same reasons set forth in the Court's Opinion and Order at pp. 8-9.

## **CONCLUSION**

For the foregoing reasons, defendant City of New York respectfully requests that the Court issue an order denying plaintiff's motion for reconsideration and plaintiff's motion for leave to amend the complaint, and granting such other and further relief as this Court deems just and proper.

Dated:	New York, New York
	April 15, 2011

                                      MICHAEL A. CARDOZO
                                      Corporation Counsel of the
                                          City of New York
                                      Attorney for Defendant City of New York
                                      100 Church Street, Room 2-138
                                      New York, New York  10007
                                      T:  (212) 788-6760
                                      awelch@law.nyc.gov

                            By:	            /s/
                                      Alicia H. Welch (AW 9523)
                                      Assistant Corporation Counsel

Eric Eichenholtz,
Alicia H. Welch
Of Counsel